**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Charles Comer, et al.,

                    Plaintiffs,

    v.

DIRECTV, LLC, et al.,

                   Defendants.

                           Case No. 2:14-cv-1986

                           Judge Graham

                           Magistrate Judge Kemp

## Opinion and Order

### I.    Introduction

This matter is before the Court on the defendants' motions to dismiss. (Docs. 48, 49, 51). The plaintiffs are 27 former and current satellite-installation technicians suing under the Fair Labor Standards Act ("FLSA"). The defendants are (1) DIRECTV, LLC ("DIRECTV"); (2) DirectSAT USA, LLC ("DirectSAT"); and (3) Multiband Corporation ("Multiband"). The technicians allege the defendants violated the FLSA by failing to pay minimum wage and overtime. All three defendants filed motions to dismiss; DIRECTV and DirectSAT filed a combined memorandum supporting their motions, and Multiband filed separately. Because the defendants present similar arguments in their motions, the motions will be considered together.

### II.    Background

#### A.  Factual allegations

DIRECTV is a satellite television provider. To deliver its product into the homes of its customers, DIRECTV must install a satellite dish at each location. DIRECTV employs technicians, contracts with other companies, and hires independent contractors to install satellite dish-

1

es. The intermediate satellite-installation companies are called Home Service Providers ("HSPs"), of which DirectSAT[1] and Multiband were two. Many of the technician-plaintiffs were W-2 employees of, or independent contractors for, a variety of smaller, independent companies, which subcontracted for the HSPs. (First Am. Compl. (hereinafter "FAC") at ¶ 123 (technician alleging he worked as a W-2 technician for a subcontracting company)). The technicians did not name any of these smaller, subcontracting companies as defendants in this action. The technicians allege DIRECTV controls this "Provider Network" even though it does not own each individual HSP. Through this network, DIRECTV exerts employee-level control over individual technicians without exposing itself to employee-level liability under statutes like the FLSA. This is what the technicians call a "fissured employment scheme," a scheme designed to disguise the fact that DIRECTV was the technicians' employer.

As their employer, DIRECTV underpaid the technicians by using a "piece-rate" scheme and treating them as independent contractors. Through DIRECTV's piece-rate scheme it paid the technicians "on a per-task (a/k/a piece rate) basis for satisfactorily completing a DIRECTV-approved satellite installation." (FAC at ¶ 88). DIRECTV only paid the technicians for completed projects and not for "unproductive" time. Many of the plaintiffs allege they spent 10-20 hours a week working for the benefit of DIRECTV, DirectSAT, and Multiband on tasks not assigned a piece rate and which were thus unpaid. (*See, e.g.*, FAC at ¶ 119).

Now, the technicians allege that they were underpaid to the point of violating the FLSA. All the technicians bring claims against DIRECTV; some are also suing DirectSAT; some are also suing Multiband. (FAC at ¶ 128 (Pierre LaForest asserting claims against DIRECTV and DirectSAT); ¶ 122 (Paul Groninger asserting claims against DIRECTV, DirectSAT, and Multi-

---

[1] DirectSAT purchased "substantially all" of the assets of another HSP, Skylink Ltd. ("Skylink") in 2014. Skylink is not a party to this lawsuit, a fact of some importance, which the Court discusses later.

band); ¶ 146 (Gary Steele asserting claims against DIRECTV and Multiband)). And while DI-RECTV never issued any of the technicians a paycheck, the technicians allege DIRECTV was their "employer" for purposes of the FLSA, and as an employer, DIRECTV violated the FLSA by failing to pay them overtime and minimum wage.

While DIRECTV does not treat the technicians as employees for purposes of the FLSA, the technicians allege it does exercise a high degree of control over them. They allege DI-RECTV, among other things, (1) requires technicians to hold themselves out as agents of DI-RECTV, (FAC at ¶ 70); (2) prescribes exactly how satellite dishes are to be installed; (3) trains the technicians to install satellites according to its specifications, (FAC at ¶¶ 71–73); (4) super-vises the technicians and reduces their pay by imposing "chargebacks" if it is not satisfied with the work, (FAC at ¶¶ 75, 77); (5) assigns work schedules directly to technicians through its pro-prietary workflow system (called "SIEBEL"), through which it could effectively terminate a technician by ceasing to issue work orders to that technician. (FAC at ¶ 76).

All the technicians performed work in Ohio, and all the defendants have done business in Ohio. (FAC at ¶¶ 36–37). The HSP defendants, DirectSAT and Multiband, were named as sepa-rately organized corporate entities and nowhere in the pleadings do the technicians identify them as anything but separate companies. (FAC at ¶¶ 34–35).

### B.  Procedural history

Some of the 27 plaintiffs in this action have been involved in related FLSA litigation against DIRECTV and others. In 2010, plaintiffs Comer, Evans, Sillars, and Steele opted into an FLSA collective action captioned *Lang, et al. v. DIRECTV, Inc., et al.* (FAC at ¶¶ 100–04). The *Lang* court ultimately granted the parties' joint motion to decertify the action and dismissed the

3

presently involved plaintiffs without prejudice, tolling the statute of limitations. (FAC at ¶ 100); *Lang v. DIRECTV, Inc.*, 2:10-cv-1085 (E.D. La.), doc. 467.

Those same plaintiffs refiled similar individual claims in a "mass" action in California. (FAC at ¶ 101); *Acfalle v. DirecTV, Inc.*, 2:13-cv-8108 (C.D. Cal.). In 2014, the court dismissed without prejudice the presently involved plaintiffs and tolled the statute of limitations for 90 days. (FAC at ¶ 101); *Acfalle*, doc. 71.

Some of the other presently involved plaintiffs consented to become party plaintiffs in yet another FLSA collective action. (FAC at ¶ 103); *Arnold v. DIRECTV, Inc.*, 4:10-cv-352 (E.D. Mo.). The court there dismissed without prejudice the claims of certain opt-ins who did not fit into a specific subclass, including a number of the presently involved plaintiffs. In a slight wrinkle, three of the presently involved plaintiffs, Daniel Blankenship, Phil DeMarco, and Mark Puckett, were not named on the *Arnold* decertification list. (FAC at ¶ 103 n.5); *Arnold*, docs. 221, 244. The parties dispute whether the technicians' claims in *Arnold* overlap with the claims presented here. (Pls.' Resp. in Opp'n at 8 n.8, doc. 58; DIRECTV and DirectSAT's Mem. at 5).

This case was filed on October 20, 2014. (Compl., doc. 1). Shortly after filing, the Judicial Panel on Multidistrict Litigation (the "MDL Panel") denied a motion to transfer and consolidate this case with other related actions. *In re: DIRECTV, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 84 F. Supp. 3d 1373, 1374 (J.P.M.L. 2015). Those other, similar cases continue, and the issues presented here have been litigated in many other district courts. *See, e.g.*, *Mabry v. DIRECTV, LLC*, No. 3:14-CV-00698, 2015 WL 5554023 (W.D. Ky. Sept. 21, 2015). Those district courts have almost universally denied DIRECTV's similar motions to dismiss. (Pls.' Notice of Suppl. Authority, doc. 71; Pls.' Second Notice of Suppl. Authority, doc. 76; Defs.' Notice of Suppl. Authority, doc. 70; Defs.' Second Notice of Suppl. Authority, doc. 75).

### III.    Discussion

#### A.  Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *Iqbal*, 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555–56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancement[s]"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").  The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion."  *Twombly*, 550 U.S. at 556 n.3.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555–56. Analyzing whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[W]hen deciding a motion to dismiss a court may consider only matters properly a part of the complaint or pleadings." *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). The Court may consider "exhibits submitted by the defendant which can properly be considered incorporated by reference into the complaint and, thus, a part of the pleadings." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). The Court will consider exhibits "part of the pleadings" if "they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

**B. Plaintiffs' claims against DirectSAT need not be dismissed for failure to join Skylink because Skylink is not a necessary party under Federal Rule of Civil Procedure 19**

DirectSAT moves to dismiss all claims arising before September 9, 2012, the date DirectSAT purchased substantially all of the assets of another satellite-installation company, Skylink Ltd ("Skylink"). (FAC at ¶ 63; DIRECTV & DirectSAT's Ex. 6, Asset Purchase Agreement, doc. 50-6). DirectSAT argues that since the technicians failed to join Skylink as a party, and the technicians assert claims for the period in which they worked for Skylink, these claims violate Rule 19's requirement that parties must be joined if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Therefore, since Skylink is solely liable for these claims but is not a party to the lawsuit, these Skylink-era claims must be dismissed.

The technicians counter that they may be accorded complete relief for Skylink-era claims if the Court applies the doctrine of successor liability. (Pls.' Resp. at 10–13). Successor liability, they argue, operates to hold the successor corporation— DirectSAT—liable for the FLSA liabilities of, its predecessor corporation—Skylink.

DirectSAT replies that the technicians never allege that it should be held liable for Skylink's purported FLSA violations. (DIRECTV & DirectSAT's Reply at 3, doc. 66). And even if they did so allege, there is no clear precedent in the Sixth Circuit applying the doctrine of successor liability to FLSA claims. (*Id.* at 3–4). Further still, even if the Court applied the doctrine of successor liability to FLSA claims using the rules established in other circuits, DirectSAT is not liable as the corporate successor of Skylink under that precedent. (*Id.* at 3–7).

As a preliminary matter, DirectSAT argues that the technicians' claims fail because they never specifically allege that DirectSAT should be liable for Skylink-era liabilities. But in anoth-

er case, this Court held that lack of an "explicit reference to a theory of successor liability in the Plaintiff's Third Amended Complaint" did not preclude the use of the theory by plaintiffs because the allegations in the Complaint "were sufficient to put the Defendants on notice of the Plaintiff's potential reliance on [the] theory of successor liability." *Clark v. Shop24 Glob., LLC*, 77 F. Supp. 3d 660, 691 (S.D. Ohio 2015) (Graham, J.) (summary-judgment stage).

Here, at an even earlier stage, DirectSAT has clear notice that the technicians intend to pursue it for Skylink-era damages through the doctrine of successor liability: the First Amended Complaint essentially recites the elements of successor liability when discussing Skylink, (FAC at ¶¶ 63–64); the asset purchase agreement confirms the technicians' allegations that DirectSAT purchased essentially all of Skylink's assets, (Defs.' Ex. 6, Asset Purchase Agreement at § 1); and the technicians allege claims against DirectSAT from the Skylink era. (*See, e.g.*, FAC at ¶¶ 213–14 (Claims of Mark Puckett)). The pleadings sufficiently notify defendants that the technicians' intend to pursue recovery of Skylink-era claims from DirectSAT through successor liability, and at an even earlier stage than in *Clark*. *See id.* at 691.

The second question is whether the doctrine of successor liability applies to FLSA liabilities: it does. In employment law, the doctrine of successor liability may impose a legal obligation of the predecessor company on the successor company even though the acquisition is in the form of an asset purchase. *See Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 554–55 (6th Cir. 2006) (applying successor liability under the Family and Medical Leave Act). However, the Sixth Circuit has not decided whether the doctrine of successor liability applies to FLSA claims.[2] But this

---

[2] DIRECTV and DirectSAT argue that Pennsylvania law applies to this issue because of the choice-of-law provision in the Asset Purchase Agreement. (Defs.' Ex. 6, Asset Purchase Agreement at § 11.5). The interpretation of the Agreement may indeed be governed by Pennsylvania law, but the Court does not need to interpret the agreement. The issue is whether the agreement's broad liability disclaimer disclaims FLSA liabilities, which is a matter of federal common law. *See Huguley v. Gen. Motors Corp.*, 67 F.3d 129, 133 (6th Cir. 1995) (extending the federal com-

Court has previously reviewed the issue and "approved the application of successor liability under the FLSA." *Clark*, 77 F. Supp. 3d at 692 (holding that other circuits have "uniformly approved applying successor liability under the FLSA"). For the same reasons as discussed in *Clark*, the Court will again apply successor liability to the FLSA. *See id.* (citing *Thompson v. Bruister & Associates, Inc.*, No. 3:07–00412, 2013 WL 1099796, at *4–5 (M.D. Tenn. Mar. 15, 2013) (reasons for applying successor liability include unanimity of other courts, Sixth Circuit recognizing successor liability in employment context, the purposes of the FLSA, and absence of persuasive arguments to the contrary)).

The third question is whether the doctrine of successor liability operates here to impute liability to DirectSAT for the liabilities of Skylink. Successor liability is appropriate in the employment-law context if "the imposition of such liability would be equitable." *Cobb*, 452 F.3d at 554. To decide whether the doctrine applies in the employment context, the Court considers: "1) the interests of the defendant-employer, 2) the interests of the plaintiff-employee, and 3) the goals of federal policy, in light of the particular facts of a case and the particular legal obligation at issue." *Id.* (citing *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1091 (6th Cir. 1974)). The specific factors to consider when applying the "three prong balancing approach" include:

> (1) whether the successor company has notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether the new employer uses the same plant; (4) whether there has been substantial continuity of business operations; (5) whether the new employer uses the same or substantially same workforce; (6) whether the new employer uses the same or substantially same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [the defendant] uses the same machinery, equipment and methods of production; and (9) whether [the defendant] produces the same product.

mon law of successor liability to employment cases); *Teed v. Thomas & Betts Power Sols.*, L.L.C., 711 F.3d 763, 765 (7th Cir. 2013).

*Cobb*, 452 F.3d at 554 (citing *MacMillan*, 503 F.2d at 1094). "[A]ll nine factors will not be applicable to each case." *Cobb*, 452 F.3d at 554.

Here, DirectSAT purchased substantially all of Skylink's assets. (FAC at ¶ 63; Defs.' Ex. 6, Asset Purchase Agreement at § 1.1 and 2.2).[3] The technicians argue that when it did, "DirectSAT—and DIRECTV—knew or should have known of potential liability for wage and hour violations." (Pls.' Resp. at 13, doc. 58). They argue that they "intend to prove" this, citing FLSA cases filed against Skylink before the asset purchase to support this proposition. (*Id.*). The technicians argue, but do not appear to allege, that Skylink had notice of the charge.

The ability of Skylink to provide relief is uncertain. The technicians argue it cannot. (*Id.*). The technicians allege that DirectSAT "acquired Skylink," indicating they believe it no longer exists. (FAC at ¶ 63). DirectSAT argues that the technicians fail to plead sufficient facts for the Court to determine whether Skylink could provide relief; but even if they did plead such facts, Skylink is still an active company, possibly able to provide relief. (DIRECTV & DirectSAT's Reply at 5–6, doc. 66). The asset purchase agreement outlines a deal to purchase essentially all of the assets of Skylink, leaving it a company with few assets but flush with cash. Specifically, Skylink retained "cash," "proprietary data management software," assets related to its "fleet service business," and assets related to its "call center operations." (Defs.' Ex. 6, Asset Purchase Agreement at 1.2). Essentially, Skylink was no longer a satellite-installation company after the asset purchase, but it did retain some assets, the value of which is uncertain. It is possible that Skylink could provide relief, but its ability to do so is uncertain, which counsels for applying successor liability. DirectSAT's reference to Skylink's existence on a Secretary of State website, (DIRECTV & DirectSAT's Reply at 5), is not something the Court can consider without con-

---

[3] The Asset Purchase Agreement is properly considered as part of the pleadings. *See Weiner*, 108 F.3d at 89.

verting this decision into one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Discovery will no doubt reveal more about Skylink's financial situation, but for now, its ability to provide relief is uncertain.

Factors five through nine are essentially sub-factors of factor four: whether there has been a substantial continuity of business operations. *Cobb*, 452 F.3d at 554. And there has been. Here, the technicians allege that DirectSAT used the same workforce, the same supervisors, for the same jobs, under the same conditions, using the same equipment and methods, and providing the same service. These factors show almost uninterrupted continuity in the business operations after the September 14, 2012 asset purchase.

In short, the doctrine of successor liability at least plausibly applies in this case. The first and second prongs of the three-prong *Cobb* approach, "1) the defendant's interest, [and] 2) the plaintiff's interest" cut both ways. *Id.* at 552. However, the third prong, the "federal policy embodied in the relevant statutes in light of the particular facts of the case and the particular duty at issue," *id.* at 552, counsels in favor of applying the doctrine of successor liability to remedy an alleged violation of the FLSA. And while the technicians have not pleaded every *Cobb* factor in detail, their allegations are sufficient to "allow the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678. The technicians have therefore adequately pleaded a case of successor liability. Consequently, the defendants' motion to dismiss the technicians' Skylink-era claims for failure to join Skylink as a necessary party is denied.

**C. The technicians have adequately pleaded that DIRECTV, DirectSAT, and Multiband were their employers**

DIRECTV had no formal employment relationship with any of the technicians. But the technicians are suing DIRECTV, DirectSAT, and Multiband because, they allege, the economic reality was that these companies were their employers. All three defendants argue that the technicians' failure to plead that DIRECTV, DirectSAT, and Multiband were their employers and that any defendant is their "joint employer" dooms their claim. The Court will address the joint-employment issue first and then the issue of whether the technicians have adequately pleaded that the defendants were their employers.

The defendants argue that to determine "joint-employment," the Court should use a four-part "economic reality" test. *See Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 902 (6th Cir. 1991). The technicians argue that there are five, not four factors, and that those factors are different and announced in a different case. *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012).

But the "joint-employment" question is not dispositive of these claims. Joint-employment and employment are different theories. If neither DIRECTV, DirectSAT, nor Multiband were the technicians "employer," none will be liable for any claims. If one of the defendants were an "employer," it could be liable for minimum wage and overtime claims. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."). If more than one of the defendants was a technicians' employer, then the question of joint-employment becomes important, because it could make two or more employers jointly liable for any damages. 29 C.F.R. § 791.2(a) (Joint employment) ("all joint employers are

12

responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek."). Importantly, "there is nothing in the multifactor tests for either employment or joint employment that requires a plaintiff to establish that he is an FLSA 'employee' of each and every entity above him." *Dowd v. Directv, LLC*, No. 14-CV-14018, 2016 WL 28866, at *4 (E.D. Mich. Jan. 4, 2016). To the extent the defendants argue that the technicians' failure to plead a joint-employment relationship dooms the technicians' claims, the defendants' argument is without merit. Nearly identical cases have passed before many district courts across the country, and nearly all have rejected DIRECTV's similar arguments. *See, e.g.*, *Mabry v. DIRECTV, LLC*, No. 3:14-CV-00698, 2015 WL 5554023, at *1 (W.D. Ky. Sept. 21, 2015) (denying similar motion). The Court will do the same here.

"The FLSA's definition of 'employee' is strikingly broad and 'stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles.'" *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 804 (6th Cir. 2015) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). A company's self-serving label of "independent contractor" means little to the Court's analysis of employment; the Court must look at the "economic reality" of the relationship to determine whether an individual is "dependent upon the business to which they render service." *Mabry*, 2015 WL 5554023, at *2 (quoting *Doucette v. DIRECTV, Inc.*, 2015 WL 2373271, at *2 (W.D. Tenn. May 18, 2015)). The application of the economic-reality test requires analysis of six factors:

> (1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed[; and] . . . [6]

> whether the service rendered is an integral part of the alleged employer's business.

*Keller*, 781 F.3d at 807 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1117, 1117 n.5 (6th Cir. 1984)).

The first factor—the permanency of the relationship between the parties—weighs in favor of treating the technicians as employees. *Id.* The technicians allege that DIRECTV orchestrated the Provider Network, and, in some cases, was the sole client of the HSPs. (FAC at ¶¶ 41–42). Although DIRECTV did not have the power to directly hire and fire the technicians, the technicians allege it set hiring criteria for the HSPs and set the requirements for how the technicians were to perform their work, which the HSPs would then enforce. (FAC at ¶¶ 44–46). Technicians received a unique "Tech ID Number" from DIRECTV and checked into DIRECTV's SEIBEL system, which it used to assign work orders to the technicians. (FAC at ¶¶ 53–54). DIRECTV paid technicians per job and issued chargebacks to their pay in a variety of circumstances; in other words, DIRECTV and the technicians had an ongoing cycle of credits and debits on the technicians' account. These allegations indicate the relationship between DIRECTV, the HSPs, and the technicians was fairly permanent and unlike an independent contractor relationship.

The second factor—the degree of skill required—weighs in favor of treating the technicians as employees. *Keller*, 781 F.3d at 807. To analyze this issue, the Court considers whether "profits increased because of the 'initiative, judgment[,] or foresight of the typical independent contractor,' or whether his work 'was more like piecework.'" *Id.* at 809 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). While the technicians' jobs do require some mechanical skill, they allege that DIRECTV "mandates particularized methods and standards of installation." (FAC at ¶ 52). The HSPs supervised the technicians and enforced DIRECTV's

14

standards. (FAC at ¶ 44). And while the technicians could marginally increase profits because of their own initiative and efficiency, their work is "more like piecework than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor." *Rutherford*, 331 U.S. at 730. This factor—the degree of skill required—weighs in favor of treating the technicians as employees.

The third factor—the worker's investment in equipment or materials for the task—cuts both ways. *Keller*, 781 F.3d at 807. The technicians were "required to purchase supplies necessary to perform installations." (FAC at ¶ 94). But, the technicians would also use equipment that belonged to DIRECTV and was warehoused by the HSPs. (FAC at ¶ 47). This factor provides equivocal guidance.

The fourth factor— the worker's opportunity for profit or loss, depending upon his skill—also cuts both ways. *Keller*, 781 F.3d at 807. Technicians could be "charged-back" for sub-standard work, (FAC at ¶ 93), and some performed more installations per week and made more money than others, (*Compare* FAC at ¶ 109 (plaintiff Comer "paid $1600 per week") *and* ¶ 133 (plaintiff Reinhart "paid $600 per week"). However, the technicians could never change the prices they charged for their services; DIRECTV set the prices. (FAC at ¶ 84). And in *Keller*, in an almost identical situation, the Sixth Circuit found this presented a jury question. *Id.* at 813. While the allegations cut both ways, the facts alleged are more characteristic of an employment relationship.

The fifth factor—the degree of the alleged employer's right to control the manner in which the work is performed—weighs in favor of considering the technicians to be employees. *Keller*, 781 F.3d at 807. The technicians allege sufficient detail about the level of control exercised by DIRECTV to state a plausible claim that they were DIRECTV employees. Here, "the

degree of the alleged employer's right to control the manner in which the work is performed" was substantial. *Id.* DIRECTV controlled what work was done and when it was done through its SIEBEL database system, which assigned schedules and dispatched technicians to particular work orders. (FAC at ¶ 53). Technicians were required to check in with DIRECTV at the start of a job and when they finished. (FAC at ¶ 55). DIRECTV required technicians to hold themselves out as DIRECTV personnel: DIRECTV required its insignia displayed on the technicians' uniforms and vehicles. (FAC at ¶ 56). The HSPs were the supervising middle-men in this arrangement. (FAC at ¶ 44). In summary, DIRECTV—directly and through the HSPs—controlled what work the technicians performed, how it was done, the standards to which it was done, how much work the technicians could do, and the prices they could charge for and receive from that work.

The sixth factor—whether the service rendered is an integral part of the alleged employer's business—weighs in favor of treating the technicians as employees. *Keller*, 781 F.3d at 807. "The more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship." *Id.* at 815. Without technicians installing their satellite dishes, DIRECTV could not sell its product. Therefore, the sixth factor indicates that the economic reality was that the technicians were employees.

The technicians allege with sufficient particularity an employment relationship with DIRECTV. This conclusion is consistent with those of many other courts encountering this issue, including two in the Sixth Circuit that have considered nearly identical cases. *See, e.g.*, *Mabry*, 2015 WL 5554023, at *3; *Doucette*, 2015 WL 2373271, at *5 (plaintiffs "have provided detailed allegations as to the control DIRECTV had over them and their dependent relationship with DIRECTV.").

16

The technicians also sufficiently allege employment relationships with DirectSAT and Multiband—the HSP defendants. The work of these HSPs was to implement DIRECTV's fissured-employment scheme and act as middle-men between DIRECTV and the technicians or the technicians' subcontractor. (FAC at ¶¶44–48, 54). Based only on the pleadings, the Court cannot completely separate the control exercised by DIRECTV and the control exercised by the HSPs; therefore, the Court cannot say that DIRECTV was an employer and the HSPs were not. It is sufficient to state that the technicians have provided enough detail to raise their claims of employment by DirectSAT and Multiband from possible to plausible.

### D. The technicians have pleaded their minimum-wage and overtime claims with sufficient particularity

DIRECTV and DirectSAT argue that the technicians have failed to meet the pleading standard for minimum-wage and overtime claims by not identifying a single workweek in which they were not paid overtime or minimum wage. But since the defendants identify a pleading standard that courts in the Sixth Circuit appear to reject, and the technicians' allegations likely satisfy the more stringent (and defendant-preferred) pleading standard adopted in other circuits, the Court finds that the technicians have sufficiently pleaded their minimum-wage and overtime claims.

The question presented here is how to apply the post-*Twombly* and *Iqbal* pleading standard to FLSA claims. The law is unsettled in this area, and the Sixth Circuit has yet to weigh in. The defendants argue the Court should follow the First, Second, Third, and Ninth Circuits in requiring "plaintiffs to approximate the overtime hours worked or the amount of wages owed," and to "allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641, 644–45 (9th Cir. 2014); *see Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d

1184, 1192 (N.D. Cal. 2014) ("the FLSA claim . . . is defective because, no plaintiff alleges re-cording a break of 20 minutes or less in a specific work week in which he or she worked more than 40 hours."). But even in the circuits that require more specificity, the level of detail required is not great; it is only enough detail to notify the defendant of the extent of its defense rather than merely providing "fuel for speculation." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114–15 (2d Cir. 2013) ("a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."). Indeed, even these cases seem to permit a plaintiff to plead an average workweek rather than present details of spe-cific workweeks in the complaint. *See Landers*, 771 F.3d at 645 ("A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility.").

But courts in the Sixth Circuit have rejected attempts to tighten the post-*Twombly*/*Iqbal* pleading standard under the FLSA. *See Doucette*, 2015 WL 2373271, at *7; *Mabry*, 2015 WL 5554023, at *4 (quoting *Landers*, 771 F.3d at 641–42) ("*Twombly* and *Iqbal* do not require a FLSA plaintiff to plead 'in detail the number of hours worked, their wages, or the amount of overtime owed to state a claim for unpaid minimum wages or overtime wages.'").

> District courts within the Sixth Circuit have generally found that factual allega-tions that a plaintiff was employed by the defendant, worked regularly and repeat-edly in excess of a forty hour week, and failed to receive overtime compensation for each hour worked in excess of forty hours per week was sufficient to state a claim for relief under Fed. R. Civ. P. 8.

*Mabry*, 2015 WL 5554023, at *4. Just as in the nearly identical situation in *Mabry*, here the plaintiffs have pleaded sufficient facts from which the Court can plausibly infer they were not paid minimum wage and overtime. *Id.*; *see Iqbal* at 678.

18

Even if the Sixth Circuit were to adopt a stringent pleading standard, these claims would not likely be dismissed. The defendants in many of the cases cited by DIRECTV and DirectSAT were "left to guess at what time periods were covered by the plaintiff's allegations." *Lucero v. Leona's Pizzeria, Inc.*, No. 14-C-5612, 2015 WL 191176, at *1 (N.D. Ill. Jan. 13, 2015). In *Lucero*, the district court denied a motion to dismiss where the plaintiff alleged that he was never paid for overtime and worked an average of 77 hours per week. *Id.* The plaintiff in *Lucero* alleged he was "misclassified as exempt from the requirement to pay time-and-one-half for overtime. . . . [and] that he *always* worked more than forty hours per week but was paid a flat wage." *Id.* at *2. The *Lucero* court determined that the defendant was "not left to guess at when the plaintiff contends he was underpaid." *Id.*

Here, similarly, the plaintiffs allege that in an average workweek they were not paid overtime or minimum wage. Just like the plaintiff in *Lucero* was misclassified, the technicians here allege they were misclassified, not as exempt salaried employees, but as independent contractors. And just like the plaintiff in *Lucero* adequately pleaded unpaid overtime by approximating his weekly hours, the technicians here adequately plead their unpaid overtime by approximating their weekly hours.

The defendants have not been left to guess at what time periods are covered by the technicians' allegations. The technicians have estimated the length of their average workweek during the applicable period, they have estimated their average weekly wage, they have estimated the amount of overtime they worked, and they have provided other details describing DIRECTV's payment scheme. These details permit the Court to find plausibility. Therefore, even under a more stringent pleading regime for FLSA claims required in other circuits, the technicians' claims would be adequately pleaded.

19

**E. The technicians who allege weekly average pay satisfying FLSA requirements still state a claim because the Court can infer that their weekly wage occasionally dipped below minimum wage**

All three defendants argue that even under a more lenient pleading standard, many of the technicians have still not adequately pleaded FLSA violations. DIRECTV and DirectSAT point to eleven of the technicians whose allegations do not amount to violations of the FLSA. (DIRECTV & DirectSAT's Mem. at 24–26). Multiband does the same with two of the three plaintiffs who allege it violated the FLSA. (Multiband's Mem. in Support of Mot. to Dismiss at 14–15, doc. 52). The basis for this argument is that many of the plaintiffs allege their weekly average "take-home pay" was greater than minimum wage plus overtime. The technicians respond that the allegations are averages, and averages obscure the occasional dips below minimum wage that are plausible for all of the technicians. (Pls.' Resp. at 24–25). The defendants counter that if all the technicians allege is an average workweek, and that average is above the minimum wage, they have pleaded no FLSA violation.

DIRECTV and DirectSAT argue that courts dismiss claims when the plaintiff's own allegations show they earned more than minimum wage. *See, e.g.*, *Nicholson v. UTi Worldwide, Inc.*, No. 3:09-CV-722, 2010 WL 551551, at *4 (S.D. Ill. Feb. 12, 2010). In *Nicholson*, the employee-plaintiffs claimed they should be paid for work performed before each of their regular paid shifts as forklift operators. *Id.* at *1. There, the plaintiffs' overtime claims survived a motion to dismiss, but their minimum-wage claims did not. *Id.* at *5. Their minimum-wage claims were dismissed because the forklift operators alleged wages above the minimum wage: even after dividing their weekly pay by their paid hours plus the alleged unpaid hours, the new hourly rate still exceeded minimum wage. *Id.*

20

This case is distinct from *Nicholson* because here the technicians' pay was not as predictable and regular as that of the forklift operators in *Nicholson*. The factors affecting the technicians' pay are the piece-meal payment system, unreimbursed expenses, "unproductive time," and chargebacks. These factors could all make the technicians' pay fluctuate, making it plausible that even those who allege an average weekly wage above minimum wage would be occasionally paid below minimum wage in a given week.

DIRECTV argues that all this shows is that it is "possible" that a plaintiff was underpaid in some hypothetical week. The point is well taken, and the Court concedes that the case is near the line between possible and plausible. But adopting DIRECTV's approach would create an even stricter pleading standard than the standard adopted in other circuits because it would require FLSA plaintiffs whose weekly average wage is not in violation of the FLSA to cite the specific weeks in which their pay violated the FLSA. Companies work to smooth earnings across quarters, but workers typically do not enjoy such power over their paychecks. Those workers who are (1) misclassified as independent contractors, and (2) experience fluctuation in their paychecks, may find that during some weeks they are underpaid in violation of the FLSA while having an average wage that does not violate the FLSA. This is a reasonable inference to draw from the technicians' allegations. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

It is reasonable that some weeks, technicians were paid below minimum wage. It is even plausible that this was frequent for those technicians who allege an average wage barely above the minimum. If these technicians' pay was as regular as the forklift operators in *Nicholson*, they

would likely have pleaded themselves into dismissal of their minimum-wage claims, but because their pay is irregular, their claims survive.

### F. The FLSA's statute of limitations grants the plaintiffs a look-back period of three years plus the additional time during which the period was tolled

The defendants argue that the FLSA's two-year statute of limitations bars some technicians' claims entirely and many technicians' claims in part. The technicians respond that a three-year limitations period should apply because the defendants acted willfully.

An FLSA action "may be commenced within two years after the cause of action accrued. . . except that a cause of action arising out of a willful violation may be commenced within three years." 29 U.S.C. § 255(a). "A cause of action is deemed to accrue, as a general rule, 'at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.'" *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (quoting *Archer v. Sullivan County,* 129 F.3d 1263, 1997 WL 720406, at *2 (6th Cir. 1997) (unpublished table decision)). A willful FLSA violation means "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

The technicians do not need to "state [willfulness] with particularity," because "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, a plaintiff cannot make a conclusory allegation that a defendant acted willfully. *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014) (citing *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)) (applying Rule 9(b) standard to Family and Medical Leave Act).

In situations nearly identical to this, the courts in *Doucette* and *Mabry* found that satellite-installation technicians had sufficiently alleged willfulness by alleging almost the same facts alleged here: a fissured employment scheme, employee-level control over the technicians, and misclassification of the technicians as independent contractors. *Doucette*, 2015 WL 2373271, at *5; *Mabry*, 2015 WL 5554023, at *5. These allegations, mirrored in the technicians' complaint, are not mere legal conclusions, but detailed allegations that, if true, make it plausible that the defendants willfully violated the FLSA. The defendants are correct in their reply that it is not illegal to hire independent contractors or even to do so with the express purpose of limiting exposure to employee liability. But, if a company does so while at the same time exercising employee-level control, it can be inferred that the system is designed to shirk the company's FLSA responsibilities as an employer. Regarding the HSP defendants, the technicians allege that they took part in this scheme and knew or should have known, based on similar litigation nationwide, that the scheme violated the wage-and-hour laws of the FLSA. (FAC at ¶ 276).

Therefore, the Court finds that the technicians have adequately pleaded willfulness and will consider all claims against all defendants within the three-year look-back period plus the additional tolling time added by the *Arnold*, *Lang*, and *Acfalle* courts.[4] The defendants' motions to dismiss are granted to the extent the technicians assert claims beyond this period.

### G. Any purported recordkeeping violations are not actionable

Technicians admit they have no independent claim for recordkeeping violations. (Pls.' Resp. at 3). Indeed, they cannot bring such a claim. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002) ("Authority to enforce the Act's recordkeeping provisions is

---

[4] This additional tolling time does not extend the time to file claims not brought against a defendant in any of the previous actions. For example, McKinley Tate did not sue Multiband in any of the prior suits; therefore, the additional tolling time added by those courts does not apply to Tate's claims against Multiband.

vested exclusively in the Secretary of Labor.") (citing 29 U.S.C. § 217). To the extent the technicians allege a recordkeeping claim, it is dismissed.

### H. The technicians have not improperly split their claims

DIRECTV and DirectSAT argue that the Court should dismiss the claims of three of the technicians—Blankenship, Demarco, and Puckett—because they continue to pursue FLSA claims in the previously mentioned *Arnold* action. *See Arnold v. DIRECTV, Inc.*, 2:10-cv-00352 (E.D. Mo.). The court in *Arnold* originally certified a number of opt-ins to participate in the collective action but later decertified the claims of "the opt-in Plaintiffs not subject to a prior order of dismissal or staying for arbitration and that are not covered by those proposed subclasses." (Ex. 4, *Arnold* Order at 1, doc. 50-4). Blankenship, Demarco, and Puckett were not on the decertification list. These three plaintiffs are pursuing claims in *Arnold* "for time served as a W-2 employee of a HSP and not for time claimed herein." (FAC at ¶ 103 n.5).

Litigants cannot bring two different actions presenting two different theories of recovery arising from the same facts: this is claims splitting. *See Twaddle v. Diem*, 200 F. App'x 435, 439 (6th Cir. 2006). If they do so, they risk "having one case barred by the decision in the other." *Id.* "[T]he rule against splitting claims is nothing more than that aspect of *res judicata* which requires the court to determine the scope of the prior claim." *Harris v. Ashley*, 165 F.3d 27 (6th Cir. 1998).

Here, the preclusion risk to the litigants does not exist. This is because the technicians' claims do not overlap between *Arnold* and this action. (FAC at ¶ 103 n.5). Defendants argue that the technicians failed to explain this in their complaint and that the Court cannot now consider this, a matter outside of the pleadings and only contained in the technicians' response brief. The Court has considered the pleadings and has found they adequately explain that the three techni-

cians in question had claims that were not decertified in *Arnold* and that the claims they present here are different from those they present in *Arnold*. (FAC at ¶ 103, n.5). The three technicians describe the time periods for which they seek recovery in this action and in the *Arnold* action, and the periods do not overlap. (*See* FAC at ¶ 154 (Blankenship), ¶ 178 (Demarco), ¶¶ 213–14 (Puckett)).

The scope of the *Arnold* action does not overlap with the scope of this action. Therefore, the Court will not dismiss the claims of the three technicians on claims-splitting grounds.


IV.    **Conclusion**

Therefore DIRECTV, DirectSAT, and Multiband's Motions to Dismiss are DENIED IN PART AND GRANTED IN PART. (Docs. 48, 49, 51). The Motions are GRANTED to the extent that technicians assert claims beyond the three-year look-back period plus the tolling periods from prior cases and to the extent technicians assert recordkeeping-violation claims. The motions are otherwise DENIED. The technicians' conditional motion to amend is DENIED as moot. (Doc. 59).

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge


DATE:  March 4, 2016